## N. Y. COMMON PLEAS.

In the Matter of the Assignment of MILAN HULBERT and WILLIAM A. HULBERT, &c.

*Assignments — Composition — Upon what the commissions of the assignee is to be estimated — Compensation to attorney of assignee — Code of Civil Procedure, secs.* 3252, 3253.

Where upon a composition under the general assignment act, the creditors have agreed to take the notes of the assignors for a per centage of the amount of their respective claims, and when after payment of the expenses, all the property assigned, or the proceeds of it, is restored to the assignors, the five per cent commission upon the value of the estate allowed by law to the assignee is to be estimated upon the aggregate · amount of the composition, with the expenses incurred and paid out by the assignee added to it.

In allowing compensation to the attorney of the assignee the court will not go beyond the $2,000 allowed in the cases provided by sections 3252 and 3253 of the Code of Civil Procedure, unless the nature of the attorney's services is specifically detailed, in order that their value may clearly appear.

*Special Term, May,* 1881.

*A. W. Kent,* of counsel for assignors.

*S. P. Nash,* of counsel for assignee.

Matter of Hulbert.

DALY, *C. J.* — This was an application to set aside an order confirming the report of a referee upon a final accounting of an assignee after a composition under the general assignment act, upon the ground that the assignors had no notice of the proceeding, but were represented in it by an attorney who assumed to act for them without authority.

As the whole estate goes to the assignors after the execution of the composition deed, the delivery of the composition notes and the discharge of the assignee and his sureties upon the accounting, the assignors are entitled to notice of all the proceedings upon the accounting which without it would be irregular. There is a direct conflict in the affidavits as to whether the attorney who appeared for the assignors had or had not authority to act for them; and after the hearing of the motion, the counsel for the assignee and the creditors agreed that, without passing upon that question, the proceedings might be reopened to the extent of considering the validity and propriety of the amount allowed the assignee for his commissions, and for the services of counsel employed by him and the referee's fees, these being the three items in the accounting of which the assignors chiefly complained.

The statute has fixed the amount of the assignee's commission. It declares (*sec.* 22, *Laws of* 1877) that he "shall receive for his services, a commission of five per centum on the whole sum which will have come into his hands." The words "whole sum," I think, sufficiently indicate that the per centage allowed is to be computed upon a money basis. The word sum, which has many meanings, is here used in one of its most ordinary significations, as a quantity of money or its equivalent in currency, securities or some kind of property. Where the trust created by the assignment has been fully executed according to the terms of the instrument, and the property of every kind and description has been converted into money, which, after the payment of the expenses of the trust, is ratably distributed among the creditors, and the residue, if any, paid over to the assignee, after a final accounting,

there is no difficulty in determining upon what the per centage is to be computed. It is to be computed upon all that the assignee has received, paid out and distributed. But this is a case of composition, where, in conformity with the provision of the act, the creditors have agreed to take the notes of the assignors for forty per cent of the amounts of their respective claims, and where, after the payment of the expenses, all the property assigned, or the proceeds of it, is restored to the assignors; and there is some difficulty in determining under the act upon what, in such a case, the per centage is to be computed. The assignee claims that the five per cent is to be computed upon the value of the whole of the property assigned, as the value appears in the schedule, which would make the amount of his commissions $18,117. The referee allowed him $11,647, upon the actual value of the property, as proved before him, after deducting the Follet notes of $129,418.60 — that is, upon $232,941.08.

When the statute declares that the commission is to be five per cent upon the whole sum which shall come into the assignee's hands, it does not mean to limit the allowance to the receipt and payment of money only (*Wagstaff* agt. *Lawrence,* 23 *Barb.,* 226, 227; *Matter of De Peyster,* 4 *Sandf., chap.* 511; *Bennet* agt. *Chapin,* 3 *Sandf.* [*S. C.*], 673; *Matter of Bunch,* 12 *Wend.,* 280; *Meachem* agt. *Stearns,* 9 *Paige,* 404, 405; *Cairns* agt. *Chaubert, Id.,* 164; *Van Buren* agt. *Chenay Ins. Co.,* 12 *Barb.,* 671), for a composition is allowed by the act, and in the case of a composition very little or no money at all may come into the hands of the assignee. The true rule to be applied is the one laid down by the chancellor in *Mc Wharter* agt. *Benson (Hopk.,* 42), and followed in the subsequent cases above cited, that the amount and value of the property which is confided to the trustee, and which passes through his hands, is the basis upon which his compensation is to be computed; that the amount of the estate indicates with sufficient exactness the extent of his labor, care and services, and their reasonable value; that a

Matter of Hulbert.

plain rule of calculation is afforded by the amount of the property held in trust, which is comprehensive and simple, and which, in ordinary cases, is a very just criterion of the value of the services of the trustee; that whatever the objections may be to such a rule, all other plans of compensation are exposed to far greater evils, and if it does not accomplish what is just in all cases it is because all human methods are imperfect.

Assuming this to be the rule, the question arises as to how the value of the estate is to be determined in a case of composition, where the value has not been ascertained, as it otherwise would be by the sale or other disposition of the property. The assignee claims that the value must be taken as it is stated to be in the affidavit filed with the schedules; but this, I think, by no means follows. A more reliable and certain estimate of the value, in my opinion, is the aggregate amount of the composition, with the amount added to it that has been incurred for expenses which have been or will have to be paid out in the final accounting. I assume, from the fact of the insolvency, that the amount of the indebtedness was greater than the value of the property, and the creditors having agreed to discharge the insolvent upon receiving forty per cent of the amount of their respective claims, this aggregate amount may be fairly taken as their business estimate of about all that they expected to get from the sale of the assigned property, the collection of the debts and the final disposition of the trust, which, with what is added to it for the expenses incurred and paid out of the estate by the assignee, fairly represents, in my opinion, the value of the estate as a basis upon which to compute the per centage to be allowed the assignee, which will, even then, be a very large sum — about $6,500 or something over — for the services he has rendered, which practically has been little more than giving security in $100,000, and paying out some money for expenses, the property having been left in the assignee's charge, who, up to the time of the composition, collected the debts, sold

such of the stock in trade as has been disposed of, and who alone saw the creditors and got them to enter into the composition.

There is nothing before me to show upon what grounds the referee allowed the assignee's attorney $2,000, who had previously received $2,000 from the assignee. The assignee, who is himself a lawyer, advised the assignor that he would have to employ counsel, and Mr. Sutherland says that he was in almost daily consultation with the assignee respecting various matters and questions arising in progress of the trust. The nature of the legal services rendered does not appear by this statement, and it is difficult to conjecture what necessity there could have been for almost daily consultations by the assignee with a legal adviser, under an assignment, in respect to which there has been no contest or controversy, and which terminated in a composition. I assume that Mr. Sutherland may have drawn the composition deed; that he prepared all the necessary papers, and appeared for the assignee on the accounting; and it appears to me that the $2,000 already paid to him is an ample compensation for all legal services that he could have rendered, unless the nature of them is more specifically detailed than in the papers before me. The utmost that can be allowed under the Code in the cases provided for in sections 3252 and 3253, however difficult, extraordinary or lengthy the litigation may be, is $2,000, and as this is a legislative expression of the limit of the value of legal services in cases that may and frequently do involve greater labor, difficulty, time and attention than any services that, in my judgment, could have been rendered under this assignment, I shall not go beyond that limit, in the absence of a more specific statement of the services than is now before me, and hold that the additional $2,000 allowed by the referee cannot be sustained.

The $500 allowed for referee's fees appear to be large, as there were but four hearings, five witnesses examined and no opposition or contest about any item in the account. Still

I hesitate to reduce this amount, because the labors of an auditor are different from those of a referee and may require an extensive examination by him of accounts and vouchers, without or after the hearing before him, and the preparation of a report or final accounting involving more labor than the written findings or conclusions of a referee ordinarily are, and, therefore, I do not propose to interfere with this amount, as I cannot say, in respect to the labor or services that may have been rendered, that it is unreasonable.

These are the only three items, as I understand the agreement, that I am to review and pass upon.